JOSEPH DOUGLASS, plaintiff in error, *vs.* M. S. THOMSON, defendant in error.

When the equity of the bill is fully sworn off by the answer, and the bill is retained for a hearing, and no irreparable mischief can result, this Court will not control the discretion of the Court below, in dissolving the injunction.

Equity. Dissolution of injunction. By Judge COLE. Bibb Superior Court. February Term, 1869.

Douglass' bill against Thomson and the sheriff of said county, contained the following averments: Douglass bought of D. W. Hammond a plantation, containing eight hundred acres of land, at $6,400 00, and gave his note therefor, signed by Thomson as security, and secured by a mortgage on the land. Douglass paid $3,000 00 on the note, and Hammond sued him and Thomson thereon, and obtained judgment for $4507 00 and interest. The *fi. fa.* issued, and was levied on the land. Then Douglass contracted with Thomson to give him Douglass' prospective interest in the land, upon condition that Thomson would aid him in removing the encumbrances resting upon it. To effect this, one Tutt agreed to deliver Thomson fifteen bales of cotton by the ensuing January. Douglass remained in possession of the land. Thomson paid off the *fi. fa.*, as security, and took a transfer of it to himself, and without actual notice to Douglass, had the land sold under the *fi. fa.*, and bid it in for $800 00, when it was worth $6,000 00 or $7,000 00. Of this, Douglass knew nothing, till informed by his friends.

To aid him in carrying out his agreement with Thomson, Douglass transferred to Thomson the personalty on said plantation, mules, hogs, tools, etc., etc., but continued to use them on the plantation. Douglass demanded of Thomson that he enter said *fi. fa.* satisfied by reason of said purchase; but Thomson would not satisfy it, and claims the land and personalty as his own. On the 4th of January, 1869, Thomson sued out against Douglass a possessory warrant for the personalty, and a warrant against him as his tenant holding the

land beyond his term, and placed these warrants into the sheriff's hands for execution.

Douglass prayed injunction against said warrants, that the conveyance of the personalty be cancelled, and that the *fi. fa.* be entered satisfied.

The injunction was issued and served.

Thomson answered as follows: (the averments not denied or explained, were admitted) On the 24th of September, 1867, Douglass, by regular deed, conveyed said land to Thomson, for the expressed consideration of $500 00. On the 15th of November, 1867, Hammond received of Thomson $4,549 09, $3,500 00 of which was receipted on said *fi. fa.* that day, and transferred the *fi. fa.* to Thomson. On the next day, Douglass, for the expressed consideration of $2,500 00, conveyed to Thomson said personalty, save a sufficiency of the proceeds of the crop to pay $700 00, for which one Moore held a mortgage on said personalty, and the wages of the laborers. On the 17th of November, 1867, Tutt, for the expressed consideration of $1,400 00 paid him by Douglass, conveyed to him said personalty. On the 3d of December, 1867, Thomson bought said land at sheriff's sale. On the 31st of December, 1867, Douglass rented said land and personalty from Thomson, agreeing to render him as rent one-third of the crop made during 1868, and to replace any of the personalty that should die or be destroyed, and that all made by Douglass, above expenses, should go the payment of said *fi. fa.*, and that, if Douglass worked faithfully, he was to have the privilege of selling the land, so as to make something for himself, if during the year he paid off all the claims. It was further agreed, that if Douglass' crop prospects were good, Thomson would advance necessary provisions, the cost of which, with interest, would be repaid him. After the levy, and after Douglass made said deed, but when does not appear, Douglass and Thomson entered into an agreement, by which Douglass promised to raise $1500 00, or thereabouts, by the ensuing January, to go towards paying said *fi. fa.*, and Thomson agreed to remove the encumbrances from the land, and allow Douglass to re-

deem it by paying what might be due Thomson on the first of that January. So much of the answer appears by the papers attached to it as exhibits.

Thomson answered, that Tutt was working the land, and was to deliver the fifteen bales of cotton by the 1st of November, and enough to make it $1,500 00 by the 1st of January. The sale of the land under the *fi. fa.* had been postponed till the first Tuesday in December, and the *fi. fa.* was levied on the personalty, thereby breaking up the farming operations. Thomson was then paying three per cent. per month for borrowed money, and yet was forced to pay off the *fi. fa.* He was also forced to pay Moore $703 00 to remove his mortgage, to pay the laborers $297 53, tax $34 12, and attorney's fee $50 00, to enable Douglass to carry on the farm. Thomson got but $392 02 for what cotton was delivered to him. Under these circumstances, he allowed the sale of the land by the sheriff, and bid it in to secure himself. This sale was well known to Douglass, and, during December, Thomson permitted Douglass to try to sell the land, and pay said debts, agreeing that Douglass should have all the *surplus*. Douglass tried but failed, and then made said lease of 31st December, 1867. At the end of 1868, Douglass paid Thomson the stipulated rent, but refused to deliver possession of the premises, and applied for an assignment of his homestead out of the same. Douglass never requested Thomson to satisfy the *fi. fa.* Thomson said the land and personalty was not worth what he had already paid, and in support of this opinion, referred to the appraisement when the homestead was applied for. (What that was does not appear.) He said, he was ready to reconvey upon being repaid. He said the exhibits stated the facts (but he did not say he paid said considerations expressed in the contract), that Douglass was insolvent, and prayed a bond for damages.

Upon the filing of this answer, Thomson moved to dissolve the injunction. At the hearing, Douglass produced the affidavits of two witnesses, who affirmed that said land was then worth $6,000 00. The Chancellor dissolved the in-

Douglass *vs.* Thomson.

junction, upon the ground that the equity of the bill was sworn off.    This is assigned as error.

W. POE, for plaintiff in error.

O. A. LOCHRANE, (by Judge CLARK), for defendant in error.

BROWN, C. J.

While Douglass, the plaintiff in error, has been very unfortunate in his management, and has sustained heavy loss, we do not see how it has resulted to the benefit of Thomson, his surety, who had no interest in the purchase, but became surety for Douglass for his accommodation, and has had to borrow money at three *per cent.* per month to meet the obligation of Douglass, for which he was bound as surety.  Since the purchase of the land by Thomson, his answer shows that he gave Douglass a fair opportunity to sell it, and pay back to him what he had paid out, with privilege to retain the balance for his own benefit; and Douglass found himself unable to make a sale for a sum sufficient to indemnify Thomson against loss.    Indeed, Thomson swears that he is still willing to reconvey the property, if he can get his money back.

Judge Cole decided that the equity of the bill was sworn off by the answer, and dissolved the injunction, but held up the bill for a hearing on its merits.    We cannot say that he abused the discretion vested in him by law.

As Douglass had rented the lands from Thomson, and paid rent as a tenant, and as Thomson had been put to great inconvenience, and had paid out a large sum of money to protect his property from levy and sale, when he was only a surety, we think he is entitled to the possession of the premises pending the litigation.    This is the effect of the ruling of the Court below, as we understand it, and we find no fault with it.

Judgment affirmed.